**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RECKEITTA BROWN, individually and on behalf of all others similarly situated, | : : : : |
| Plaintiff, | : Case No: : : Hon. |
| v. | : : |
| DEVRY UNIVERSITY, INC., | : : |
| Defendant. | : : : |

## COLLECTIVE ACTION COMPLAINT AND JURY DEMAND

Plaintiff, Reckeitta Brown ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned attorneys, hereby brings this Collective and Class Action against Defendant DeVry University, Inc. ("Defendant" or "DeVry") to recover unpaid overtime compensation, liquidated damages, attorney's fees, costs, and other relief as appropriate under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.* and common law. Plaintiff's allegations herein are based upon knowledge as to matters relating to herself and upon information and belief as to all other matters.

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and common law.

2.      Defendant is a for-profit higher education provider founded in 1931. It operates 18

1

campus locations across the United States. Since offering its first online courses in 1998, Defendant has evolved to provide a majority of its services and classes online.

3.      To run its business and schools, Defendant employs hundreds of employees at its campus locations and remotely across the United States. Defendant uses a number of titles to refer to its hourly employees who field and make applicant or student calls and respond and/or troubleshoot student inquiries and problems (collectively referred to herein as "Student Advisors"). These titles include, but are not limited to: Student Support Advisor, Admissions Advisor, and Student Finance Analyst.

4.      Regardless of specific job title, all of Defendant's Student Advisors were: paid on an hourly basis; classified as non-exempt employees; regularly worked forty (40) or more hours per workweek; relied on a computer and essential computer programs to perform their job duties daily; required to perform work off-the-clock before and after their scheduled shifts when they were not logged into Defendant's timekeeping system; and subject to the same relevant policies.

5.      Defendant employed Plaintiff as an hourly Student Support Advisor call center employee.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant' Student Advisors, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[1]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*.

---

[1] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited Sept. 13, 2024).

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9. Defendant violated the FLSA and common law by systematically failing to compensate its Student Advisors for work tasks completed before and after their scheduled shifts when they were not logged into Defendant's timekeeping system. This policy resulted in Student Advisors not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10. More specifically, Defendant failed to compensate Student Advisors for the substantial time they spent performing essential work tasks prior to clocking in before each shift; and after clocking out of Defendant' timekeeping system at the end of each shift.

11. Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12. At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendant at any time in the past three years.

3

## JURISDICTION AND VENUE

13.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.     Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's Student Advisors engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.     This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Illinois, employs individuals within the state of Illinois, is registered with the Illinois Office of the Secretary of State, and maintains its principal place of business in the state of Illinois.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant's principal place of business is in this District.

## PARTIES

19.      Plaintiff Reckeitta Brown is a resident of Loganville, Georgia and worked remotely for Defendant as a non-exempt Student Support Advisor from approximately July 2021 to November 2022. Defendant compensated Plaintiff through the payment of an hourly rate, most

recently $21.00 per hour. Plaintiff Harris signed a consent to join this collective action which is attached as **Exhibit A**.

20. Additional Collective members were or are employed by Defendant as Student Advisors during the past three (3) years and their consent forms will also be filed in this case.

21. Defendant DeVry University, Inc. is an Illinois corporation (File No. 62028866) headquartered in DuPage County, Illinois. In the state of Illinois, Defendant maintains a registered agent for service of process listed as C T Corporation System, 208 SO LaSalle Street, Suite 814, Chicago, Illinois 60604-1101.

## GENERAL ALLEGATIONS

22. Prior to hiring prospective Student Advisors, Defendant provided them with a written offer setting forth the job requirements and hourly rate of pay.

23. Defendant maintained documents demonstrating the promised hourly wage for each Hourly Employee including, but not limited to: offer letters, paystubs, and/or payroll records.

24. Plaintiff received an offer from Defendant to work as a Student Support Advisor, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

25. Plaintiff performed under her agreement by carrying out her job duties and responsibilities. More specifically, Plaintiff handled, among other things, prospective student inquiries regarding admissions and enrollment, and current student inquiries regarding financial aid, academic advising, scheduling, payment and billing, and the like.

26. Plaintiff provided the aforementioned applicant and student services via inbound and periodic outbound calls, and Plaintiff utilized Defendant' applications and systems to track all events and student services information. Plaintiff additionally performed the required unpaid off-

the-clock work explained throughout.

27.     Defendant paid its Student Advisors at varying hourly rates.

28.     Defendant's Student Advisors typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week. While Defendant has access to all payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) hours or more in a workweek and less than forty (40) hours in a workweek.

29.     Defendant provided training to Student Advisors on, *inter alia*, how to carry out their day-to-day job duties; how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day; how to track their time in Defendant's timekeeping system; attendance, schedule, and call quality expectations; and Defendant's policies. The training that Defendant provided to all Student Advisors was substantially, if not entirely, the same, and all Student Advisors were subject to the same and/or substantially similar policies and quality assurance reviews.

30.     At all relevant times, Defendant controlled Plaintiff's and all other Student Advisors' work schedules, duties, protocols, applications, assignments, and employment conditions.

31.     Defendant required Plaintiff and all other Student Advisors to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

32.     Defendant instructed Plaintiff and all other Student Advisors to be "call ready" the moment their scheduled shift started. This required Defendant's Student Advisors to log into and load all essential work-related computer programs and applications prior to the start of their shifts

so they could be prepared to take calls the moment their shifts began. During the boot-up and login process, Defendant's Student Advisors often experienced technical difficulties, increasing the amount of off-the-clock work they performed that day.

33.     Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the Student Advisors' clock in times in relation to their start of shift time, as well as the time the Student Advisors went into a "ready" status. Defendant enforced these policies and procedures by routinely evaluating, and at times disciplining, Student Advisors. This discipline included, but was not limited to, supervisor coaching, verbal warnings and termination.

34.     Thus, Defendant forced its Student Advisors to perform some, if not all, of the boot-up and login process before the start of their shift and before they were allowed to clock in.

35.     All of Defendant's Student Advisors used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and an indispensable part of the Student Advisors' work and they could not perform their jobs without them.

36.     Similarly, Defendant's Student Advisors, including Plaintiff, performed work off-the-clock after their scheduled shifts, after clocking out of Defendant's timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

37.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its Student Advisors in order to require them to perform pre- and post-shift work off-the-clock.

38.     The pre- and post-shift off-the-clock time Plaintiff and all other Student Advisors spent booting-up/logging into and shutting down their computers and applications and programs

directly benefitted Defendant and was integral and indispensable to the Student Advisors' job responsibilities.

39.     As a result of the off-the-clock work described herein, Plaintiff and other Student Advisors were unlawfully deprived of approximately 15 to 25 minutes of compensation every shift. On days when Student Advisors experienced technical issues, the uncompensated time could be significantly more than 25 minutes.

40.     At all relevant times, Defendant was able to track the amount of time Plaintiff and other Student Advisors spent in connection with the pre- and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other Student Advisors for the off-the-clock work they performed, thus breaching its agreements with its Student Advisors.

41.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

42.     Despite knowing Plaintiff and all other Student Advisors performed this pre- and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

43.     Defendant possesses, controls, and/or has access to information and electronic data indicating the time Plaintiff and all other Student Advisors booted-up and logged into their computers each shift, along with the time they logged into the timekeeping system.

44.     Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other Student Advisors experienced technical issues.

45.     Because Defendant required its Student Advisors, including Plaintiff, to perform pre- and post-shift work off-the-clock, the hours tracked in Defendant's timekeeping system are

inaccurate representations of the total amount of time Student Advisors spent working for Defendant. Thus, the hours reflected on the Student Advisors' paystubs are also inaccurate representations of the hours they actually worked.

### A. Pre-Shift Off-the-Clock Work

46. Like most call centers, Defendant maintained detailed attendance and schedule adherence policies and used them to evaluate its Student Advisors' job performance.

47. Defendant used its attendance and schedule adherence policies to require its Student Advisors to arrive early and work off-the-clock so they can be "phone ready" at the beginning of their scheduled shifts.

48. Throughout their employment with Defendant, Plaintiff and other Student Advisors were pressured to work substantial amounts of uncompensated off-the-clock time as part of their job duties.

49. Upon arriving to their home computers, Defendant's Student Advisors were trained and required to follow specific protocol to start-up and log in to the company's computer network and numerous software programs to access the necessary tools and information to perform their job responsibilities.

50. The pre-shift boot-up and login process generally consisted of the following steps:

   a. The Student Advisors turned on their computers from a complete shut-down state;

   b. The Student Advisors then logged into their computers with their Windows username and password;

   c. The Student Advisors then connected to Defendant's VPN using two-factor Microsoft Authenticator;

   d. The Student Advisors opened Microsoft Outlook (e-mail) and Teams (chat);

   e. The Student Advisors opened and signed into Defendant's workforce management software, Verint;

f. The Student Advisors opened and signed into Defendant's billing and customer information system, Banner;

g. The Student Advisors opened and signed into Day Force timekeeping software;

h. The Student Advisors then launched Salesforce, the phone software, and marked themselves "Available" to take calls.

51.    Defendant's Student Advisors had to complete the off-the-clock work before the start of their scheduled shifts and before fielding calls. Consequently, the Student Advisors had to begin working at least ten (10) to twenty (20) minutes before their scheduled shifts to complete their start-up and log-in activities.

52.    If the Student Advisors logged in or opened their computers immediately prior to their scheduled shifts, they were in danger of clocking in late if they could not complete the required pre-shift work necessary to be "Available" when their scheduled shifts began, and they would therefore receive a tardy on their attendance record and poor schedule adherence scores.

53.    Because Defendant's Student Advisors typically worked scheduled shifts of at least forty (40) hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

54.    Defendant had express and constructive knowledge that its Student Advisors began the pre-shift login processes while off-the-clock to make sure they were "Available" and clocked-in on time.

55.    Defendant's Student Advisors were not compensated for any of this time because Defendant prohibited Student Advisors from clocking into its timekeeping software before the start of their scheduled shifts.

56.    The pre-shift off-the-clock work Student Advisors performed directly benefited Defendant and was integral and indispensable to their job duties and responsibilities as Student

Advisors.

**B. <u>Post-Shift Off-the Clock Work</u>**

57.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other Student Advisors were required to clock-out at the end of their scheduled shift or as soon as they were done fielding their last student query for the day and *before* closing all work applications and systems.

58.      After they clocked out for the day, Student Advisors, including Plaintiff, were required to shut-down/log-out of the various computer programs and software applications they utilized in performing their job duties. This resulted in Plaintiff and other Student Advisors performing approximately an additional five (5) minutes of off-the-clock work every day.

59.     The post-shift off-the-clock work Plaintiff and other Student Advisors performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Student Advisors' job duties and responsibilities.

**C. <u>The Off-the-Clock Work Results in Viable "Gap Time" Claims</u>**

60.     "Gap time" claims are seeking '"compensation for hours worked (1) before the employee reaches the forty-hour per week overtime threshold, so it cannot violate overtime compensation laws, and (2) at a rate that averages out to more than the applicable minimum wage, so it cannot violate minimum wage laws."' *Nicholson v. UTi Worldwide, Inc.*, No. 3:09-cv-722-JPG-DGW, 2010 WL 551551 (S.D. Ill. Feb. 12, 2010). Because such "gap time" is not recoverable under the FLSA, a claim to make recovery may be made under common law. *See e.g., Dawkins v. NR 1 Transport, Inc.*, No. 20 C 4063, 2021 WL 4125086, *7 (N.D. Ill. Sept. 8, 2021) *(citing Nicholson*, 2010 WL 551551, at *6).

61. Plaintiffs, and all similarly situated Student Advisors, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

62. During the weeks that Student Advisors did not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices was a deprivation of straight time wages, in breach of Defendants' agreements with their Student Advisors.

## COLLECTIVE ACTION ALLEGATIONS

63. Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former hourly Student Advisor call center employees who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

64. Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

65. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

66. Consistent with Defendant's policies and practices, Plaintiff and the proposed FLSA Collective members were not paid for all overtime compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

67. All work Plaintiff and the proposed FLSA Collective members performed was assigned by Defendant, and/or Defendant was aware of all of the work Plaintiff and the proposed FLSA Collective members performed.

68.     Defendant was aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

69.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the FLSA Collective members. This policy and pattern or practice includes, but is not limited to:

> a.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;
>
> b.  Willfully failing to pay its employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and
>
> c.  Willfully failing to record all time its employees, including Plaintiff and the FLSA Collective members, worked for Defendant's benefit.

70.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

71.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

72.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective

members are (1) required to work without compensation due to uncompensated boot-up and shut-down time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over 40 in a week.

73.     Plaintiff estimates the FLSA Collective, including both current and former Student Advisors over the relevant period, includes hundreds of members. The precise number should be readily available from a review of Defendant's personnel and payroll records.

74.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who were unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendant unlawfully withheld from them.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

75.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former similarly situated Student Advisor call center employees who worked for Defendant at any time during the past three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

76.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

77.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

b.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications and networks is compensable time under applicable law;

c.  Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

d.  Whether Defendant' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

78.     Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

79.     Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

80.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

81.     This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

82.     Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

83.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

### COUNT I
### FLSA COLLECTIVE ACTION
### VIOLATION OF THE FAIR LABOR STANDARDS ACT,
### 29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME

84.     Plaintiff re-alleges and incorporates all previous paragraphs herein.

85.     At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

86.     At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

87.     At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

88.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and

the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

89.     Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

90.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

91.     The FLSA requires an employer to pay employees for all hours worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

92.     The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

93.     At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform off-the-clock work, every shift, and failed to pay these employees the federally mandated overtime compensation for all work performed over forty (40) hours per week.

94.     The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective members was an essential part of their jobs and these activities and the time associated with these activities was significant.

95.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime

should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207.

96.    As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of overtime wages in violation of the FLSA.

97.    Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

98.    As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages, an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

<u>**COUNT II**</u>
<u>**RULE 23 NATIONWIDE CLASS ACTION**</u>
<u>**BREACH OF CONTRACT**</u>

99.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

100.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

101.    Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for a payment at a specified, above-minimum wage for Student Advisor work, which Plaintiff accepted and performed, but Defendant failed to pay the agreed upon wage.

102.    For example, Defendant offered to compensate Plaintiff at a minimum of $21.00

per hour, if she agreed to work for Defendant as a Student Advisor. Plaintiff accepted Defendant's offer and performed her duties as a Student Advisor in reliance on the offer.

103.     Defendant breached its contractual promises by failing to pay Student Advisors at their fixed, pre-agreed hourly rate for *all* hours worked. This time includes hours worked before Plaintiff and the Rule 23 Nationwide Class reached 40 per week and at a rate that averaged out to more than the applicable minimum wage.

104.     Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $21.00 per hour within the applicable time period.

105.     Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contracts by doing their jobs and carrying out the work performed each shift, which included unpaid off-the-clock work required by the job responsibilities.

106.     By not paying Plaintiff and the Rule 23 Nationwide Class members the agreed upon hourly wage for all work performed in each shift and in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Class.

107.     Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations in this complaint (specifically the amount of off-the-clock work claim each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Class member.

108.     Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated

minimum wage of $7.25 per hour, but less than 40 hours per week (pure "gap time" claims for non-overtime hours/workweeks).

109.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

110.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 NATIONWIDE CLASS ACTION**
**UNJUST ENRICHMENT**

111.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

112.    This Count is pleaded in the alternative to Count II pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

113.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Class members performed for Defendant's benefit.

114.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required job duties.

115.    Throughout her employment, Plaintiff and the Rule 23 Nationwide Class worked up to, but sometimes not reaching or in excess of, forty (40) hours in a workweek.

116.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

117. Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

118. Defendant received and accepted the above-referenced off-the-clock work from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

119. Despite this, Defendant did not pay Plaintiff and the Rule 23 Nationwide Class members their hourly rates for all of their work, which included that which they performed up to, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

120. Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

121. Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

122. Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

123. As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests the following relief:

a.  An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts II and III);

c.  An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all FLSA Collective members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Collective members of their right to join and participate in this lawsuit;

d.  An Order designating Plaintiff as representative of the FLSA Collective, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e.  An Order declaring Defendant violated the FLSA;

f.  An Order declaring Defendant' violations of the FLSA were willful;

g.  An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative that Defendant was unjustly enriched) by failing to pay them for mandatory pre- and post-shift work activities described herein at their regularly hourly rates;

h.  An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

i.  An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

j.  An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

k.  An Order awarding such other and further relief as this Court deems appropriate.

Dated: September 18, 2024

Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Paulina R. Kennedy (P84790)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: September 18, 2024        Respectfully Submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Paulina R. Kennedy (P84790)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
kstoops@sommerspc.com
pkennedy@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*